UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX STEWART,<br><br>        Plaintiff,<br><br>-against-<br><br>STATE AUTO FINANCIAL CORPORATION, MICHAEL E. LAROCCO, ROBERT BAKER, KYM M. HUBBARD, MICHAEL J. FIORILE, DAVID R. MEUSE, S. ELAINE ROBERTS, SETAREH POURAGHABAGHER and DWIGHT E. SMITH,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Alex Stewart ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against State Auto Financial Corporation ("STFC" or the "Company") and the members of STFC's board of directors (the "Board" or the "Individual Defendants" and together with STFC, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of STFC by Liberty Mutual Holding Company Inc. and its subsidiaries ("Liberty Mutual") (the "Proposed Merger").

2. On July 12, 2021, STFC and State Automobile Mutual Insurance Company ("SAM"), the owner of approximately 58.8% of the STFC's issued and outstanding common stock as of the date thereof, entered into an Agreement and Plan of Merger and Combination (the

"Merger Agreement") with Liberty Mutual, pursuant to which Liberty Mutual will acquire all of the publicly held common Shares of STFC for $52.00 per share in cash (the "Merger Consideration"). Upon consummation of the Proposed Merger Liberty Mutual will indirectly own all of STFC's issued and outstanding common stock and the Company will become a wholly-owned indirect subsidiary of Liberty Mutual.

3. On August 9, 2021, in order to solicit STFC shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement on Schedule 14A (the "Proxy").

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for STFC, (ii) the valuation analyses performed by STFC's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey").

5. The special meeting of STFC shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to STFC's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the

Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, STFC's common stock trades on The Nasdaq Global Select Market, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and at all relevant times has been, a shareholder of STFC.

11. Defendant STFC is an Ohio corporation with its principal executive offices located at 518 East Broad Street, Columbus, Ohio 43215. STFC's common stock trades on The Nasdaq Global Select Market under the ticker symbol "STFC".

12. Individual Defendant Michael E. LaRocco is, and has been at all relevant times, a

director and the Chief Executive Officer, President and Chairman of the Board of STFC.

13. Individual Defendant Robert Baker is, and has been at all relevant times, a director of STFC.

14. Individual Defendant Kym M. Hubbard is, and has been at all relevant times, a director of STFC.

15. Individual Defendant Michael J. Fiorile is, and has been at all relevant times, a director of STFC.

16. Individual Defendant David R. Meuse is, and has been at all relevant times, a director of STFC.

17. Individual Defendant S. Elaine Roberts is, and has been at all relevant times, a director of STFC.

18. Individual Defendant Setareh Pouraghabagher is, and has been at all relevant times, a director of STFC.

19. Individual Defendant Dwight E. Smith is, and has been at all relevant times, a director of STFC.

20. The Individual Defendants referred to in ¶¶ 12-19 are collectively referred to herein as the "Individual Defendants" and with STFC they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.    Background and the Proposed Merger**

21. STFC is a super-regional insurance holding company headquartered in Columbus, Ohio. STFC, through its three insurance companies writes personal and business insurance. Approximately 60.0% of STFC's outstanding common shares are owned by SAM. SAM is an Ohio domiciled mutual property and casualty insurance company organized in 1921. SAM and its

insurance subsidiaries and affiliates, along with STFC's insurance subsidiaries make up the State Auto Group. A pooling arrangement exists between all the insurance subsidiaries in the State Auto Group by which premiums, losses and underwriting expenses are shared by the pool participants. STFC receives 65% of this underwriting pool, while SAM receives 35%.

22. Liberty Mutual is the sixth largest global property and casualty insurer based on 2020 gross written premium. Liberty Mutual, through its subsidiaries and affiliated companies, offers a wide range of property and casualty insurance products and services to individuals and businesses alike, including personal automobile, homeowners, accident & health, commercial automobile, general liability, property, surety, workers compensation, group disability, group life, specialty lines, reinsurance and individual life products. Liberty Health maintains its executive offices at 175 Berkeley Street, Boston, Massachusetts 02116.

23. On July 12, 2021, STFC issued a press release announcing the Proposed Merger, which states in relevant part:

### Liberty Mutual Insurance Bolsters Independent Agent Network with Agreement to Acquire Auto Group

*Addition of Super-Regional Insurer is Anticipated to make Liberty 2nd Largest IA Carrier in US*

BOSTON and COLUMBUS, Ohio, July 12, 2021 /PRNewswire/ -- Liberty Mutual Holding Company Inc. ("Liberty Mutual"), State Automobile Mutual Insurance Company ("State Auto Mutual"), and State Auto Financial Corporation (NASDAQ: STFC) ("State Auto Financial") announced today that they have signed a definitive agreement pursuant to which Liberty Mutual would acquire State Auto Group, a super-regional insurance holding company headquartered in Columbus, Ohio. Under the terms of the agreement, State Auto mutual members will become mutual members of Liberty Mutual and Liberty Mutual will acquire all of the publicly held shares of common stock of State Auto Financial for $52 per share in cash.

The acquisition will significantly expand Liberty Mutual's position as an industry leader for personal lines and small commercial insurance. Liberty Mutual today distributes its Safeco Insurance personal auto, homeowners and specialty products, and Liberty Mutual small business insurance through more than 10,000

independent agencies countrywide. Through the deal, Liberty Mutual will add $2.3 billion in premium and State Auto's network of approximately 3,400 independent agencies across 33 states and is expected to become the second largest carrier in this key distribution channel.

"State Auto Group's capabilities and product expertise are an ideal complement to Liberty Mutual's domestic personal lines and small commercial business, and we welcome 2,000 talented associates to our family," said Liberty Mutual Chairman and Chief Executive Officer David Long. "Equally appealing are its values. For almost a century, State Auto has celebrated a culture of caring for people, exceptional service and deep philanthropy, mirroring our purpose to help people embrace today and confidently pursue tomorrow."

The sixth-largest auto and home insurer in the US, Liberty Mutual also offers multiple distribution channels to consumers for its Liberty Mutual-branded products: through exclusive agents in local sales offices countrywide, licensed telesales counselors and online.

"The opportunity to join the Liberty Mutual organization is a direct result of the incredible work of the State Auto team, beginning with the transformation of our business and culture that began in 2015," said State Auto President and CEO Mike LaRocco. "We've become a digital provider of auto, home and business insurance while remaining fully committed to the independent agency system, as we've been since our founding 100 years ago. Our partnership with Liberty Mutual will further that commitment to independent agents and contribute to the collective success of our agents, policyholders, shareholders and associates."

The transaction was approved by the State Auto Financial board of directors (upon the recommendation of a special committee of independent State Auto Financial directors), as well as the State Auto Mutual board of directors (upon the recommendation of a special committee of independent State Auto Mutual directors). The deal is expected to close in 2022, pending State Auto Mutual member approval, State Auto Financial shareholder approval, receipt of required regulatory approvals and other customary closing conditions. In connection with the merger of State Auto Financial, State Auto Mutual has entered into a voting agreement with Liberty Mutual under which it has agreed to vote its 58.8% interest in State Auto Financial in favor of the merger.

Waller Helms Advisors LLC and Goldman Sachs & Co. LLC acted as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisor to Liberty Mutual in the transaction.

Houlihan Lokey Capital, Inc. acted as financial advisor and Kirkland & Ellis LLP acted as legal advisor to the Special Committee of Independent Directors of State Auto Financial in the transaction.

Keefe, Bruyette & Woods, a Stifel Company, and BofA Securities, Inc. acted as

financial advisors and Squire Patton Boggs (US) LLP acted as legal advisor to the Special Committee of Independent Directors of State Auto Mutual in the transaction.

**About Liberty Mutual Insurance**

At Liberty Mutual, we believe progress happens when people feel secure. By providing protection for the unexpected and delivering it with care, we help people embrace today and confidently pursue tomorrow.

In business since 1912, and headquartered in Boston, today we are the sixth largest global property and casualty insurer based on 2020 gross written premium. We also rank 71 on the Fortune 100 list of largest corporations in the U.S. based on 2020 revenue. As of December 31, 2020, we had $43.8 billion in annual consolidated revenue.

We employ over 45,000 people in 29 countries and economies around the world. We offer a wide range of insurance products and services, including personal automobile, homeowners, specialty lines, reinsurance, commercial multiple-peril, workers compensation, commercial automobile, general liability, surety, and commercial property.

For more information, visit www.libertymutualinsurance.com

**About State Auto Financial Corporation**

State Auto Financial, headquartered in Columbus, Ohio, is a super-regional property and casualty insurance holding company. State Auto Financial common stock is traded on the NASDAQ Global Select Market, which represents the top fourth of all NASDAQ listed companies.

The insurance subsidiaries of State Auto Financial are part of the State Auto Group. The State Auto Group markets its insurance products throughout the United States, through independent insurance agencies, which include retail agencies and wholesale brokers. The State Auto Group is rated A- (Excellent) by the A.M. Best Company and includes State Automobile Mutual, State Auto Property & Casualty, State Auto Ohio, State Auto Wisconsin, Milbank, Meridian Security, Patrons Mutual, Rockhill Insurance, Plaza Insurance, American Compensation and Bloomington Compensation. Additional information on State Auto Financial and the State Auto Insurance Companies can be found online at http://www.StateAuto.com/STFC.

## II.     The Proxy Omits Material Information

24.     On August 9, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to STFC's shareholders to ensure that it did not contain

any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for STFC's shareholders to make an informed decision in connection with the Proposed Merger.

### A.     The Misleadingly Incomplete Financial Projections

25.     The Proxy omits material information regarding the financial projections for STFC and relied upon by Houlihan Lokey in their analyses. The Proxy provides values for non-GAAP financial metrics, including Total Revenues and Net Income, but fails to provide unlevered cash flows or any of the line items used to calculate these metrics.

26.     The projections served as a primary reason for the Board to approve the Proposed Merger and for Houlihan Lokey to find the Merger Consideration "fair" to STFC shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: Is the Merger Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Thus, the omitted information is plainly material to shareholders and must be disclosed.

27.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Houlihan Lokey and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of STFC's value and financial picture in the Proxy misleadingly incomplete.

B.  **The Misleadingly Incomplete Summary of Houlihan Lokey's Valuation Analyses**

28.  The Proxy describes Houlihan Lokey's fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information by including the fairness opinions and valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 31. However, the summary of Houlihan Lokey's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, STFC shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to STFC's shareholders.

29.  In summarizing Houlihan Lokey's *Selected Companies Analysis*, the Proxy fails to disclose: (i) the individual multiples and metrics for the companies observed in the analysis, and (ii) the inputs and assumptions underlying the selected multiple ranges of 13.5x to 15.5x CY 2021E adjusted net income, 11.5x to 13.5x CY 2022E adjusted net income and 1.25x to 1.50x MRQ book value to corresponding financial data for STFC.

30.  In summarizing Houlihan Lokey's *Selected Transactions Analysis*, the Proxy fails to disclose the financial data observed for each of the selected transactions, including: (i) the premia and/or transaction value of the selected transactions observed, (ii) the assumptions and inputs underlying the selected multiple range of 1.50x to 1.75x, and (iii) the volume weighted average stock price for each of the selected transactions.

31.  The summary of Houlihan Lokey's *Discounted Cash Flow Analysis* for STFC is also deficient. The Proxy fails to disclose: (i) the implied terminal value of STFC, (ii) inputs and

assumptions underlying the range of terminal value multiples of 11.5x to 13.5x to the Company's estimated CY 2025E adjusted net income and 1.50x to 1.75x to the Company's estimated book value as of December 31, 2025, and (iii) the bases for the discount rate range of 9.0% to 10.0%.

32. These material omissions render the summary of Houlihan valuation analyses included in the Proxy misleadingly incomplete.

        C.        <u>Houlihan Lokey's Conflicts of Interest</u>

33. The Proxy also fails to disclose potential conflicts of interest involving Houlihan Lokey. The Proxy states that Houlihan Lokey and certain of its affiliates may provide investment banking, financial advisory and/or other financial or consulting services to STFC, SAM and Liberty Mutual. Proxy at 41. The Proxy, however, does not specify whether Houlihan Lokey is currently engaged to provide such services to STFC, SAM or Liberty Mutual, nor does the Proxy disclose the compensation paid to Houlihan Lokey for these services.

34. It is important for shareholders to receive sufficient information to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have, especially when those motivations could lead them to favor the interests of certain transactions or particular shareholders over others, and especially where, as here, the fee for advisory services is contingent upon the closing of the Proposed Merger. The failure to disclose this information represents a material omission.

35. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and

is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting STFC's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for STFC, and (ii) Houlihan Lokey's valuation analyses performed in support of its fairness opinion.

41. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to STFC's shareholders, though they could have done so without extraordinary effort.

42. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Houlihan Lokey reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Houlihan Lokey as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Houlihan Lokey as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate

that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as STFC's officers and directors.

44. STFC is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of STFC's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of STFC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of STFC, and participation in and/or awareness of STFC's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly

or indirectly, the decision making of STFC, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of STFC, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 12, 2021                          **MONTEVERDE & ASSOCIATES PC**

                                                 */s/ Juan E. Monteverde*
                                                Juan E. Monteverde (JM-8169)
                                                The Empire State Building
                                                350 Fifth Avenue, Suite 4405
                                                New York, NY 10118
                                                Tel: (212) 971-1341
                                                Fax: (212) 202-7880
                                                Email: jmonteverde@monteverdelaw.com

                                                *Attorneys for Plaintiff*